UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CAROLYN L. BEACH                    )
            Plaintiff               )
                                    )
      v.                            )        NO. 1:06-CV-48
                                    )        COLLIER/CARTER
MICHAEL J. ASTRUE                   )
Commissioner of Social Security     )
            Defendant               )

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule

72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the

disposition of the plaintiff's Motion for Summary Judgment on the Pleadings (Doc. No. 10) and

defendant's Motion for Summary Judgment (Doc. No. 11).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the

final decision of the Commissioner of Social Security denying the plaintiff a period of disability

and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be

REVERSED and the case be REMANDED FOR AN AWARD OF BENEFITS with an onset

date of May 26, 2004.

.               <u>Plaintiff's Age, Education, and Past Work Experience</u>

The plaintiff was born on October 28, 1959, and was 45 years old at the time of the ALJ's

decision (Tr. 44).  She has a high school education and previously worked as a secretary, clerk,

and factory laborer (Tr. 60, 63, 70-73).  The plaintiff alleges disability due to fibromyalgia (Tr.

59).

Claim for Benefits

Plaintiff filed an application for disability insurance benefits on October 20, 2003, alleging she became disabled on October 1, 2002 (Tr. 44-47). Plaintiff's application was denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ) (Tr. 30-36, 39-40, 253-70). The ALJ found Plaintiff had the residual functional capacity to perform sedentary to light exertional work, and therefore concluded that she could perform her past relevant work as a secretary, a sedentary job, and a clerk, a light job (Tr. 13-23). When the Appeals Council denied Plaintiff's request for review (Tr. 7-10), the ALJ's decision became the final decision of the Commissioner and the decision is now subject to judicial review. *See* 20 C.F.R. § 404.981.

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has

2

done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1.  The claimant meets the nondisability requirements for a Period of Disability and Disability Insurance benefits set forth in Section 216(I) of the Social Security act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability (20 CFR § 404.1520(b)).

3.  The claimant has an impairment or a combination of impairments considered "severe" as discussed in the body of the decision, based on the requirements in the Regulations 20 CFR § 404.1520(e).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding her subjective limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7.  The claimant has the residual functional capacity described above in the decision (20 CFR § 404.1567).

8.  The claimant is able to perform her vocationally relevant past work as a secretary and clerk (20 CRF § 404.1565).

9.  The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(Tr. 21).

### Issues Raised

Plaintiff seeks reversal or remand asserting the following errors:

1.  The ALJ erred by failing to consider the entire record when evaluating Plaintiff's impairments.

2.  The ALJ erred in failing to give appropriate weight to the opinion of Dr.

4

Gibson, Plaintiff's treating physician.

3.  The ALJ erred in finding that the Plaintiff was not a credible witness.

Relevant Facts

Medical Evidence

The record reflects Plaintiff presented to Dr. Gibson in November 2002 complaining of generalized pain (Tr. 182-83).  After examination, Dr. Gibson diagnosed muscular pain syndrome but noted that, overall neurologically, Plaintiff appeared to be intact (Tr. 182).  He commented that it was likely that Plaintiff would not be able to continue a physical job, as she was doing at the time (Tr. 183).  As of October 2002, Plaintiff worked as a factory laborer, with constant standing, reaching, and crouching (Tr. 71).  Dr. Gibson completed a work form recommending that Plaintiff remain off work for six weeks for treatment (Tr. 183).  In December 2002, Dr. Gibson stated that Plaintiff had "persistent musculoskeletal pain, which will likely end up being fibromyalgia" (Tr. 179). Notes from Dr. Gibson in January 2003 reflect that Plaintiff had completed her physical therapy but continued to have pain (Tr. 178). Dr. Gibson diagnosed "probable fibromyalgia" and opined that it was "unlikely that the patient will be able to return to her current job, which is a physical job" (Id.). In April 2003, Dr. Gibson expressly diagnosed fibromyalgia (Tr. 177). Continued visits throughout 2003 reflect that increased pain medications, including Ultram and 600 mg doses of ibuprofen, were unsuccessful in treating Plaintiff's pain. Dr. Gibson's notes reflect he saw her in May, September and December of 2003 (Tr. 174-76). The diagnosis of fibromyalgia was unchanged (Tr. 174-175).

A November 2002 MRI of Plaintiff's cervical spine revealed loss of normal cervical lordosis with straightening, probably due to muscle spasm (Tr. 129).  There was no disc

5

herniation, no spinal stenosis, no masses, no evidence of syrinx or intramedullary mass, and no paravertebral abnormalities (Tr. 129). A November 2002 MRI of Plaintiff's lumbar spine showed no disc herniation, no spinal stenosis, no neural foraminal narrowing, and no paravertebral abnormalities; bone marrow signal was normal with no evidence of a tumor or fracture or other focal lesions (Tr. 131). Dr. Gibson commented that the November MRIs were unremarkable (Tr. 180). Similarly, a November 2002 EMG revealed a normal study with no evidence of neuropathy or radiculopathy (Tr. 181).

Dr. Horton, a primary care physician, saw Plaintiff on a few occasions (Tr. 198-212), and, in November 2004, stressed the importance of regular exercise (Tr. 200). In a November 19, 2003 treatment note, Dr. Horton acknowledged plaintiff had a history of fibromyalgia and lists fibromyalgia as a chronic problem (Tr. 201).

Dr. Johnson performed a consultative evaluation of Plaintiff in January 2004 (Tr. 160-62). Plaintiff described a history of fibromyalgia for over one year with pain in the entire body, pain in the cervical spine, both shoulders, the lumbar spine, and both legs (Tr. 160). On physical examination Dr. Johnson noted Plaintiff ambulated with a normal gait (Tr. 160). Plaintiff had full range of motion of the cervical spine, but there was cervical supraspinal ligamental prominence. He observed that Plaintiff had trapezius spasms and positive fibromyalgia trigger points in the cervical and shoulder region (Tr. 160). Plaintiff had normal range of motion in both shoulders (Tr. 160).

Dr. Misra, a state agency physician, reviewed the record evidence in February 2004 (before the May 26, 2004, disabling opinion of Dr. Gibson) and concluded Plaintiff could perform a range of medium exertional work (Tr. 163-70).

In May 2004, Plaintiff self-referred to Dr. Huffstutter, a rheumatologist, for evaluation of her diffuse pain (Tr. 186-91). She reported easy fatigue and lack of energy and cold intolerance (Tr. 186). X-rays of Plaintiff's lumbar spine were normal (Tr. 189). Dr. Huffstutter also confirmed the diagnosis of fibromyalgia syndrome (Tr. 186).

On May 26, 2004, 18 months after he began treatment of Plaintiff, Dr. Gibson completed a "Medical Opinion Form (physical)" (Tr. 193-95). He reported that Plaintiff could sit for one to two hours at a time for a total of eight hours in a day and could stand or walk less than an hour at a time for a total of four hours in a day (Tr. 193). Dr. Gibson assessed Plaintiff could lift one to ten pounds occasionally (Tr. 193). He felt that she could occasionally perform fine manipulation but only infrequently bend at the waist, reach above her shoulders, and stand on a hard surface (Tr. 193). Dr. Gibson also checked "Yes," indicating Plaintiff had to rest more frequently than during a one thirty-minute break and two fifteen-minute breaks normally allowed in a work setting, and opined that she needed to rest ten to fifteen minutes for every one to two hours of work (Tr. 194). He opined Plaintiff experienced lapses in concentration or memory on a regular basis, *i.e.* daily for several hours per day (Tr. 194). Dr. Gibson also opined Plaintiff needed to be absent from a full-time work schedule on a chronic basis, *i.e.* more than four absences during any month period (Tr. 195). Specifically, she would not be reliable in attending an 8-hour work day, 40-hour work week schedule in view of the degree of pain, fatigue and other limitations (Id.). Plaintiff suffers from severe pain, and her subjective complaints are reasonable in light of Dr. Gibson's observations and diagnoses (Id.). Plaintiff's pain, medical condition, and medication would cause daily lapses in memory or concentration lasting several hours a day (Id.). Plaintiff would have a reasonable medical need to be absent from work on a chronic basis – "10 or more"

days per month (Tr. 195). Finally, Dr. Gibson stated that Plaintiff met the American Rheumatological criteria for fibromyalgia (Id.)

Dr. Gibson continued to treat Plaintiff and saw her in May 2004, November 2004, and April 2005 (Tr. 240-45). In November 2004, Dr. Gibson again encouraged Plaintiff to maintain activities (Tr. 242). After approximately 2 ½ years of treatment, he noted her fibromyalgia was unchanged and continued to adjust her medications (Tr. 240, 242, 244).

<u>Analysis</u>

Plaintiff moves the Court to reverse the Commissioner's Decision and award benefits because the ALJ (1) failed to consider the entire record when evaluating Plaintiff's impairments, (2) failed to give appropriate weight to the opinion of Dr. Gibson, Plaintiff's treating physician, and (3) erred in finding that the Plaintiff was not a credible witness. For reasons that follow, I agree with the Plaintiff's contentions. The ALJ should have given controlling weight to the opinion of the treating physician, and the ALJ's finding related to plaintiff's subjective complaints of pain is not supported by substantial evidence.

The plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinion of Dr. Gibson, her treating physician, who found she met the required rheumatological criteria for a diagnosis of fibromyalgia[1] and that the patient's restrictions were such that she was

---

[1] **FIBROMYALGIA**

_____A group of common nonarticular rheumatic disorders characterized by achy pain, tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft-tissue structures. These may be primary and generalized or concomitant with another associated or underlying condition, or localized and often related to overuse or microtrauma factors.

The term **myalgia** indicates muscular pain. In contrast, **myositis** is due to inflammation of muscles tissues and is an inappropriate term for fibromyalgia, when such inflammation is absent. **Fibromyalgia** indicates pain in fibrous tissues, muscles, tendons, ligaments, and other "white" connective tissues. Various combinations of these conditions may occur together as

muscular rheumatism.  Any of the fibromuscular tissues may be involved, but those of the occiput, low back **(lumbago)**, neck **(neck pain or spasm)**, shoulders, thorax **(pleurodynia),** and thighs **(aches and charley horses)** are especially affected.  There is no specific histologic abnormality, and the absence of cellular inflammation justifies the preferred terminology of fibromyalgia rather than the older terms of fibrositis or fibromyositis.

### Etiology

The condition occurs mainly in females, may be induced or intensified by physical or mental stress, poor sleep, trauma, exposure to dampness or cold, and occasionally by a systemic, usually rheumatic, disorder.  A viral or other systemic infection (eg, Lyme disease) may precipitate the syndrome in an otherwise predisposed host.  **The primary fibromyalgia syndrome (PFS)** is particularly likely to occur in healthy young women who tend to be stressed, tense, depressed, anxious, and striving, but may also occur in adolescents (particularly girls) or in older adults, often associated with unrelated minor changes of vertebral osteoarthritis.  A minority of cases may be associated with significant psychogenic or psychophysiologic manifestations.  Symptoms can be exacerbated by environmental or emotional stress, or by a physician who does not give proper credence to the patient's concerns and discharges the matter as "all in the head."

### Symptoms, Signs and Diagnosis

Onset of stiffness and pain frequently are gradual, diffuse, and of an "achy" character in PFS.  In localized form, symptoms are more often sudden and acute.  The pain is aggravated by straining or overuse.  Tenderness may be present, usually localized in specific small zones; ie, "tender points."  There may be local tightness or muscles spasm, though active contractions typically cannot be demonstrated by electromyography.  Inflammation is not characteristic and only occurs with an underlying systemic condition.  **Diagnosis of PFS** is by recognition of the typical pattern of diffuse fibromyalgia and nonrheumatic symptoms (eg, poor sleep, anxiety, fatigue, irritable bowel symptoms) and by exclusion of significant contributory or underlying disease (eg, generalized OA, RA, polymyositis, polymyalgia rheumatica, or other connective tissue disease), and (most difficult of all) exclusion of psychogenic muscle pain and spasm.  Fibromyalgia associated with such disorders (ie, concomitant or secondary fibromyalgia) manifests musculoskeletal symptoms and signs similar to PFS (except for psychogenic rheumatism), but requires differentiation from PFS to allow identification and treatment of both the underlying disorder and the fibromyalgia itself.  PFS, lime irritable bowel syndrome, is a well-defined dysfunctional entity, readily diagnosed by its characteristic manifestations and by screening tests to exclude underlying conditions.  Occult rheumatic disease and hypothyroidism in the middle-aged female should be excluded.  Screening tests are normal.  Nonspecific and mild histopathologic changes may be present in the muscles, but similar changes are also found in normal control subjects.

### Prognosis and Treatment

Fibromyalgia may remit spontaneously (in milder cases) with decreased stress but can

precluded from working (Tr. 192-195). On the other hand, the Government argues there is

substantial evidence to support the ALJ's conclusion. The Government argues the ALJ

concluded Plaintiff had fibromyalgia, which was a "severe impairment" within the meaning of

the Act (Tr. 17). However, considering all the record evidence, the ALJ proceeded to evaluate

Plaintiff's residual functional capacity and found she was able to perform sedentary and light

exertional work (Tr. 20). Since Plaintiff's past work as a secretary was a sedentary job, and her

past job as a clerk was a light job, the Commissioner argues the ALJ reasonably concluded

Plaintiff could perform these jobs and was, therefore, not disabled (Tr. 20, 21).

Fibromyalgia, or fibrosistis as it is also referred to, presents unique challenges to the ALJ

and the Commissioner because there are no objective medical tests which can assess the severity

of the disease or even its very existence. In order to diagnose the disease, a physician must

perform tests to rule out other diseases and rely upon subjective symptoms related to the

physician by the patient. See footnote 1, supra. The Sixth Circuit in Preston v. Sec'y of Health

and Human Servs., 854 F.2d 815 (6th Cir. 1988), discusses the anomalies of this disease:

>  ...fibrosistis causes severe musculoskeletal pain which is accompanied by stiffness

---

become chronic or recur at frequent intervals. Relief may be obtained from important supportive measures, such as reassurance and explanation of the benign nature of the syndrome, as well as stretching exercises, improved sleep, local applications of heat, gentle massage, and low-dose tricyclic agents at bedtime (eg, amitriptyline 10 to 25 mg) to promote deeper sleep. Aspirin 650 mg orally q 3 to 4 h or other NSAIDs in full dosages have not been shown to be effective in clinical trials but may help individual patients. Incapacitating areas of focal tenderness may be injected with 1% lidocaine solution, 1 or 2 mL alone or in combination with a 40-mg hydrocortisone acetate suspension (using the technique described for soft tissue injection in the treatment of chronic low back pain, above). A tricyclic antidepressant drug should be used in the lowest effective dose and may be continued indefinitely with monitoring of side effects, if any. If drowsiness occurs with one product, an alternative (in low dose) may be prescribed. Functional prognosis is usually favorable with a comprehensive, supportive program, although some degree of symptoms tends to persist. The Merck Manual, Sixteenth Edition, pp. 1369-1371.

and fatigue due to sleep disturbances. In stark contrast to the unremitting pain of which fibrositis patients complain, *physical examinations will usually yield normal results--a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients*. The medical literature also indicates that fibrositis patients may also have psychological disorders. The disease commonly strikes between the ages of 35 and 60 and affects women nine times more than men.

Id. at 817 (emphasis added.)

Our task in reviewing this issue is complicated by the very nature of fibrositis. Unlike most diseases that can be confirmed or diagnosed by objective medical tests, fibrositis can only be diagnosed by elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue.

Id. at 818.

In Preston, the onset date of disability was in dispute. The plaintiff in Preston asserted she became disabled by fibrositis in May 1983 while the Secretary of Health and Human Services asserted the plaintiff did not become disabled until March 1986. The plaintiff's treating physician, Dr. Crabbs, opined the plaintiff was disabled prior to March 1986. The Secretary argued Dr. Crabbs could not be relied upon because there was no objective medical evidence to support Dr. Crabbs' opinion. The Sixth Circuit rejected this argument stating:

Although the opinion of a treating physician, when supported by medical evidence, is entitled to substantial weight in determining disability, *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir.1986), the Secretary argues that such medical evidence is lacking to support Dr. Crabbs' opinion. The Secretary also cites the fairly normal clinical and test results obtained by Drs. Kramer and Bridwell which do not correlate with a disabling disease. However, the CT scans, X-rays, and minor physical abnormalities, noted by these doctors and cited by the Secretary as substantial evidence of no disability before March 26, 1986, are not highly relevant in diagnosing fibrositis or its severity. ***As noted in the medical journal articles in the record, fibrositis***

*patients manifest normal muscle strength and neurological reactions and have a full range of motion. Thus, the standard clinical tests and observations conducted by Drs. Bridwell and Kramer to detect neurological and orthopaedic disease were of little aid or relevance in the diagnosis of Preston's disabling fibrositis, except as a means of excluding certain neurologic or orthopaedic causes of her pain.* In other words, the findings of Drs. Bridwell and Kramer are not substantial evidence that Preston's fibrositis is not disabling.

*Id.* at 819-820 (emphasis added.)

The Sixth Circuit has recently revisited this issue in <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234, 2007. In <u>Rogers</u>, the Court again recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs (citing <u>Preston</u>). <u>Rogers</u> at 7. As in both <u>Preston</u> and <u>Rogers</u>, the ALJ's decision here dismisses or minimizes plaintiff's fibromyalgia, found to be severe by her treating physician, diagnosed by a rheumatologist, a specialist, and confirmed by a consultative examining physician. The ALJ instead at least partially accepted the non-examining, non-treating physician's opinion, based on a review of the record, as to her limitations. In his decision, the ALJ declined to give Plaintiff's treating physician, Dr. Gibson, controlling weight:

> . . . I do not find Dr. Gibson's opinion supported by his own treatment records or the other evidence before me. The treatment records show, prior to completing the May 2004 assessment, Dr. Gibson last examined the claimant on December 1, 2003, when he noted a normal neurological examination. On the date he completed the assessment, May 26, 2004, the claimant was seen for "prescription refills" and she had "no new concerns" (Exhibit 12F). On November 24, 2004, his physical examination showed the claimant to be well-developed, and no acute distress, and she, again, had a normal neurological examination. In fact, on November 24, 2004, he encouraged her to maintain activities and reduce the use of analgesics (Exhibit 12F). Although the claimant informed Dr. Gibson her pain had not responded to medications or physical therapy, the objective medical evidence of record shows no abnormalities and the clinical examinations show normal strength and no neurological abnormalities. In fact, Dr. Gibson has not

12

referred the claimant to a rheumatologist or to pain management treatment.
Therefore, I have not given Dr. Gibson's opinion, regarding limitations,
controlling weight.

(Tr. 18-19).

As noted in <u>Preston</u> and <u>Rogers</u>, fibrositis patients manifest normal muscle strength and

neurological reactions and have a full range of motion. The Court in <u>Preston</u> discussed

fibromyalgia and notes that physical exams will usually yield normal results - a full range of

motion, no joint swelling as well as normal muscle strength and neurological reactions. <u>Preston</u>

<u>v. Secy of Health and Human Services</u>, 854 F.2d 815 at 817 (6th Cir. 1988). In other words, when

the ALJ relies on lack of objective medical evidence showing abnormalities and clinical

examinations showing normal strength and no neurological abnormalities, he makes the same

mistake or error found in <u>Preston</u>. These are not valid reasons to deny Dr. Gibson's opinion

controlling weight.

The ALJ does not find Dr. Gibson's opinion supported by his own treatment records or

other evidence before him (Opinion page 3, Tr. 18). However, once again, the basis for finding

the opinion not supported by treatment records is that there was a normal neurological

examination and the fact that Plaintiff was encouraged to maintain activities. Further, there is no

other evidence of record that contradicts the opinion of the treating physician except for an

opinion of a non-treating, non-examining state agency reviewing physician who reviewed

medical records prior to the disabling opinion from plaintiff's treating physician. Plaintiff "self

reported" to Dr. J. Eugene Huffstutter, M.D., a Rheumatologist. In his decision, the ALJ notes:

The claimant "self-referred" herself to Dr. J. Eugene Huffstutter, M.D., a
rheumatologist. Dr. Huffstutter examined the claimant on May 11, 2004, and
stated she was ". . . essentially positive for everything I asked her" (Exhibit 6F).

The physical examination showed no evidence of joint swelling, tenderness or deformity. The claimant's gait was normal, and her strength was normal and symmetrical in the upper and lower extremities. Dr. Huffstutter noted diffuse soft tissue tender points, assessed fibromyalgia syndrome, and stated her primary care physician could follow her with medication management. He did inform the claimant she could return on an as needed basis but I find no evidence of further follow-up with Dr. Huffstutter.

Pursuant to <u>Social Security Ruling 96-6p</u>, I have considered the findings of fact made by state agency expert review consultants and consulting examining experts regarding the nature and severity of the claimant's impairments. State agency review physicians found physical limitations which are consistent with medium work activity (Exhibit 4F). I have accorded these findings some weight in this claim because they are consistent with the clinical and laboratory findings and with the record as a whole. The state agency review physicians, however, did not have the opportunity to review the entire medical record which shows the claimant continues to complain of generalized pain.

(Tr. 19).

Dr. Huffstutter, an expert in the field, noted diffuse soft tissue tender points and assessed fibromyalgia syndrome. In spite of normal gait and strength, he confirmed the diagnosis of Dr. Gibson and recommended the primary care physician follow her with medication management.

The ALJ's decision does not refer to the January 2004 consultative examination by Dr. Johnson (Tr. 160-62). Plaintiff described to Dr. Johnson a history of fibromyalgia for over one year with pain in the entire body, pain in the cervical spine, both shoulders, the lumbar spine, and both legs (Tr. 160). On physical examination, Dr. Johnson noted Plaintiff ambulated with a normal gait (Tr. 160). Although Plaintiff had full range of motion of the cervical spine, there was cervical supraspinal ligamental prominence. He observed that Plaintiff had trapezius spasms and positive fibromyalgia trigger points in the cervical and shoulder region (Tr. 160). These findings are consistent with fibromyalgia and gives further support to the assessment of Dr. Gibson, the treating physician, that plaintiff suffers from fibromyalgia.

Although the ALJ gives some weight to the State Agency reviewing physician, Reeta Misra, M.D., he notes the physician did not have an opportunity to review the entire medical record which shows claimant continues to complain of generalized pain (Decision, Tr. 19). In fact, a review of the handwritten notes on the residual functional capacity assessment of February 6, 2004 (Tr. 170) reflects that fibromyalgia trigger points are noted in the cervical and shoulder region. The notes refer to normal gait and minimal objective findings. Once again, normal gait and minimal objective findings do not address the question of whether Plaintiff has disabling limitations from fibromyalgia (See Preston and Rogers). Further, the assessment of the state agency reviewing physician is made before the disabling assessment of Dr. Gibson found in the Physical Medical Opinion Form dated May 26, 2004. For those reasons, I conclude that the opinion of the non- examining physician does not qualify as "other evidence before me of sufficient weight" to justify rejection of the treating physician rule.

The only other physician mentioned in the record is Dr. Horton, a primary care physician, who saw Plaintiff on a few occasions (Tr. 198-212), and, in November 2004, stressed the importance of regular exercise (Tr. 200). In a November 19, 2003 treatment note, Dr. Horton also acknowledges plaintiff's complaint of a history of fibromyalgia and lists fibromyalgia as a chronic problem (Tr. 201).

In summary, Plaintiff's primary care physician referred her to Dr. Larry Gibson, a neurologist who has treated Plaintiff for approximately 2 ½ years for problems diagnosed as fibromyalgia. He gave various tests to rule out other causes and concluded she has fibromyalgia. In his Physical Medical Opinion Form dated May 26, 2004, Dr. Gibson opined Plaintiff experienced lapses in concentration or memory on a regular basis, *i.e.* daily for several hours per

day (Tr. 194). Dr. Gibson also opined Plaintiff needed to be absent from a full-time work schedule on a chronic basis, *i.e.* more than four absences during any month period (Tr. 195). Specifically, she would not be reliable in attending an 8-hour work day, 40-hour work week schedule in view of the degree of pain, fatigue and other limitations (Id.). In his opinion, Plaintiff suffers from severe pain, and her subjective complaints are reasonable in light of his observations and diagnoses (Id.). Plaintiff's pain, medical condition, and medication would cause daily lapses in memory or concentration lasting several hours a day (Id.). Plaintiff would have a reasonable medical need to be absent from work on a chronic basis – "10 or more" days per month (Tr. 195). Finally, Dr. Gibson stated that Plaintiff met the American Rheumatological criteria for fibromyalgia (Id.). This opinion indicates that Plaintiff is [sic] cannot be reasonably expected to reliably complete an eight-hour day, forty-hour work week schedule, and would require chronic absence from a full-time work schedule. Unable to perform full-time work activity, the Plaintiff must be found disabled pursuant to Social Security Ruling 96-8p:

> Ordinarily, RFC ["Residual Functional Capacity"] is an assessment of an individual's ability to do sustained work-related physical and mental work activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p.

Support for and confirmation of the diagnosis of Dr. Gibson is found in the opinion of a rheumatologist, Dr. Huffstutter, and a consultative physician, Dr. Johnson, who, after examination, observed that Plaintiff had trapezius spasms and positive fibromyalgia trigger points in the cervical and shoulder region (Tr. 160). The only possible evidence in the record to contradict the consistent opinions of the treating and examining physicians is found in the Residual Functional Capacity Assessment of the non-treating, non-examining physician who did

not have the entire record available at the time of her opinion. Under these circumstances, I must respectfully conclude that this opinion is entitled to no weight. I therefore conclude that the treating physician must be given controlling weight. There is simply no evidence in the record to contradict it.

Finally, the ALJ concluded the record did not support the subjective allegations of Plaintiff:

> I find the record does not document the severity of the subjective allegations about which the claimant testified at the hearing. Although the claimant testified she has aching type pain throughout her whole body, she acknowledged medications helped her symptoms and she reported a wide range of daily activities, including watching television and performing household chores, e.g., cooking, dusting, cleaning the bathroom, making the bed, doing laundry, mopping, sweeping, vacuuming and planting flowers. The medical records show she is primarily treated by a neurologist, who noted no neurological abnormalities, no objective test abnormalities, no clinical findings beyond diffuse tenderness, and indicates the need to see her only intermittently, i.e., generally every 6 months. A rheumatologist, who examined the claimant on one occasion, stated she could return on an as needed basis but stated her primary care physician could manage her medications. Additionally, although reports vary somewhat regarding the helpfulness of her medication, she admittedly experiences no adverse side effects from her medications.
>
> Due to the absence of significant objective and laboratory medical findings which provide confirmation of an impairment(s) that could reasonably be expected to cause the subjective complaints, and based on the relatively mild pathology documented by the clinical examinations, and considering the claimant's reported activities of daily living, all of which provide to me an indication as to the intensity, persistence and limitations caused by the subjective complaints, I find the claimant's subjective allegations to be unsupported by the record as a whole, i.e., the claimant's impairments do not satisfy both parts of the "two prong" symptoms analysis mandated by Social Security Ruling 96-7p.

(Tr. 19-20).

20 C.F.R. § 404.1529(c) (3) explains the procedures for evaluating symptoms and credibility of a claimant. The Commissioner has issued Social Security Ruling 96-7p, setting out

in greater detail the methodology for evaluating symptoms and assessing a plaintiff's credibility. This ruling emphasized in subpart 4 the following points:

> 4. In determining the credibility of the individual's statements, the adjudicator **must consider the entire case record,** including the objective medical evidence, the **individual's own statements** about symptoms and how they affect the individual, and **any other relevant evidence in the case record.** An **individual's statements** about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work **may not be disregarded solely because they are not substantiated by objective medical evidence.** (emphasis added).

In this case, the ALJ finds "the claimant's subjective allegations to be unsupported by the record as a whole. . ." (Tr. 20). In making this determination, he writes that "[a]lthough the claimant testified she has aching-type pain throughout her whole body, she acknowledged medications helped her symptoms and she reported a wide range of daily activities, including watching television and performing household chores, e.g., cooking, dusting, cleaning the bathroom, making the bed, doing laundry, mopping, sweeping, vacuuming and planting flowers." (Tr. 19). The ALJ fails to note that Plaintiff explained, ". . . I paced myself out during the day where I won't get tired. . ." (Tr. 262). She also said she spends about an hour per day on these activities and takes a rest break (Tr. 266).

At issue here is a claimant's ability to perform an eight-hour work day and forty-hour work week. See SSR 96-8p. Furthermore, Plaintiff testified that she experiences pain and requires rest breaks in order to complete routine cleaning tasks such as dusting, mopping, and sweeping (Tr. 266). Plaintiff also reported problems with concentration; she testified that approximately once a week she has difficulty following along with television programs (Tr. 268-269). Finally, Ms. Beach testified that she has five or six "bad days" each month, during which "I

don't do much of anything. I lay on the couch for the day" (Tr. 269). This testimony is consistent with the opinion of Dr. Gibson that Plaintiff would require chronic absences from a full-time work schedule (Tr. 195). In addition to the fact that plaintiff's testimony appears consistent with the medical record and multiple opinions, the reasons given by the ALJ for rejecting her subjective allegations are simply misplaced.

He refers to her wide range of daily activities but, as stated above, he omits her testimony as to her pacing herself and her numerous rest breaks. The ALJ then refers to the lack of neurological abnormalities, objective test abnormalities and clinical findings beyond diffuse tenderness. In relying on those findings to reject the severity of her subjective allegations, the ALJ commits the same error as found in Preston and Rogers. Those standard medical tests and the lack of objective findings are not valid indicators of the severity of a person's condition with fibromyalgia. Consequently, the Commissioner's decision to reject Dr. Gibson's assessment of the plaintiff or to reject the plaintiff's allegations of pain is not supported by substantial evidence.

I conclude the medical evidence presented consistently confirms and supports Plaintiff's complaints of disabling pain. As plaintiff argues, treatment notes from medical specialists indicate an ongoing struggle with and frequent reports of continued pain throughout the body and an unsuccessful search for satisfactory treatment, including medication and physical therapy (Tr. 171-191; 239-245). Furthermore, the opinion of the treating physician indicates the presence of a disabling impairment (Tr. 192-195). Both Preston and Rogers instruct us that the nature of fibromyalgia is such that objective evidence generally is not available to confirm its diagnosis or its debilitating effects.

Having concluded that the ALJ's decision is not supported by substantial evidence, I must

now address the next course to take. When the ALJ's findings are not supported by substantial evidence, or are legally unsound, the reviewing court should reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or . . . the proof of disability is strong and evidence to the contrary is lacking." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994). Having considered the record carefully, I conclude the proof of disability is strong and evidence to the contrary is lacking that the plaintiff is disabled by pain caused by fibromyalgia.

There is much evidence in this record to establish the existence of fibromyalgia, far less evidence to assess the severity of it. It is difficult to determine when the degree of impairment that flows from this condition precluded all work. The first clear indication in the record of the degree of impairment is found in the Physical Medical Opinion Form of Dr. Gibson dated May 26, 2004.[2] Prior to that time, there is evidence that some work was precluded because of her condition, but it is not possible to assess whether she was capable of sedentary work until the May 26, 2004 opinion which clearly precludes work at any exertional level. For that reason I find May 26, 2004 to be the proper onset date.

---

[2]In fact, this is the only indication of the severity of the condition. Other physicians confirm the presence of this condition but do not address the severity.

<u>Conclusion</u>

I conclude the ALJ's decision is erroneously based on factors irrelevant to fibromyalgia. Substantial evidence does not exist to support the decision of the Commissioner. Proof of disability is strong and uncontradicted and evidence to the contrary is lacking. Therefore, I RECOMMEND that a judgment shall enter **REVERSING** the decision of the Commissioner and **AWARDING** the plaintiff benefits based on a finding of disability as of May 26, 2004. I further RECOMMEND defendant's Motion for Summary Judgment (Doc. No. 11) be DENIED, and plaintiff's Motion for Summary Judgment on the Pleadings (Doc. No. 10) be GRANTED.[3]

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[3]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. <u>Thomas v. Arn</u>, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. <u>Mira v. Marshall</u>, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370 (6th Cir. 1987).